[Cite as *State v. Lucas*, 2026-Ohio-230.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

STATE OF OHIO,

        Plaintiff-Appellee,

- vs -

DALE C. LUCAS,

        Defendant-Appellant.

**CASE NO. 2025-L-079**

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2024 CR 001487

## OPINION AND JUDGMENT ENTRY

Decided: January 27, 2026
Judgment: Affirmed

*Charles E. Coulson*, Lake County Prosecutor, *Jennifer A. McGee*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Eric M. Levy*, The Law Office of Schlachet and Levy, Terminal Tower, Suite 2200, 50 Public Square, Cleveland, OH 44113 (For Defendant-Appellant).

SCOTT LYNCH, J.

{¶1} Defendant-appellant, Dale C. Lucas, appeals his convictions and sentence for Domestic Violence and Attempted Abduction in the Lake County Court of Common Pleas. For the following reasons, his convictions and sentence are affirmed.

***Procedural and Factual History***

{¶2} On January 28, 2025, the Lake County Grand Jury indicted Lucas on the following charges: Domestic Violence (Count 1), a felony of the fourth degree in violation of R.C. 2919.25(A); Abduction (Count 2), a felony of the third degree in violation of R.C.

2905.02(A)(2); and Violating a Protection Order (Count 3), a misdemeanor of the first degree in violation of R.C. 2919.27(A)(1).

{¶3} On May 19, 2025, Lucas entered guilty pleas to the charges in the Indictment except that Count 2 was reduced to the lesser included offense of Attempted Abduction, a felony of the fourth degree in violation of R.C. 2905.02(A)(2) and R.C. 2923.02. At the hearing, the State made the following representations regarding the factual basis for the charges:

> Had this matter proceeded to trial, the State would establish beyond a reasonable doubt that on December 13, 2024, in Madison Township, Lake County, Ohio, the defendant did knowingly strike and punch and cause physical harm to an adult female victim who was a family or household member pursuant to their dating relationship. The defendant did have a previous conviction of domestic violence in this court, the Lake County Common Pleas Court, Case No. 22CR1331 dated March 9, 2023. In addition, on December 13, 2024, in Madison Township, Lake County, Ohio, the defendant did restrain the liberty of that same adult female victim by force or threat of force in refusing to allow her to leave the residence where they were located. And between December 24, 2024, and January 11, 2025, after having been served a protection order on December 19, 2024, the defendant did send written messages and made phone calls to that same adult female victim in violation of the term of that protection order.

{¶4} On May 29, 2025, the sentencing hearing was held. At sentencing, the State provided additional details regarding the factual basis for the charges:

> It's important for the Court to understand what happened to [the victim] on the night of December 13, 2024. She and the defendant were friends for approximately nine years, then they began dating, and she allowed the defendant to move into her home. She trusted him. He lured her to his grandmother's home to talk about their relationship and what unfolded there was nothing less than horrific for her. He threatened to kill her, he threatened to stab her, he threatened to rape and murder her and her family. He took shears and threatened to cut off her finger for being a snitch. He slapped

her in the face three times and he punched her in the face. She was scared, she was crying, she just wanted … to go home and he wouldn't let her leave. He physically blocked her from leaving. Not only did he physically blocked [sic] her, but he physically blocked his grandmother from unlocking the door to let [the victim] out of that house. She sought and obtained a protection order against the defendant and he was properly served with that order and despite that, he violated it dozens of times. He sent her three written messages while he was in jail. He called her twenty times on December 24, 2024; thirty-six times on December 25, 2024; five times on December 26, 2024; and two times on January 10, 2025.

{¶5} The trial court sentenced Lucas to serve prison terms of eighteen months for Domestic Violence (Count 1) and eighteen months for Attempted Abduction (Count 2), and one hundred eighty days in jail for Violating a Protection Order (Count 3). The court ordered the sentences for Domestic Violence and Attempted Abduction to be served consecutively with each other and concurrently with the sentence for Violating a Protection Order.

{¶6} On June 4, 2025, the trial court issued its Judgment Entry of Sentence. Lucas filed his Notice of Appeal on June 26, 2025.

*Assignments of Error*

[1.] The trial court committed plain error and placed appellant twice in jeopardy for the same conduct when it failed to merge Count One Domestic Violence with Count Two Attempted Abduction as allied offenses prior to imposing sentence upon appellant.

[2.] The trial court erred when it imposed maximum, consecutive sentences upon appellant Lucas, effectively penalizing him for accepting a plea agreement.

*The Double Jeopardy Clause and Multiple Counts Statute*

{¶7} The Fifth Amendment to the United States Constitution (the Double Jeopardy Clause) provides that no person shall "be subject for the same offence to be

Case No. 2025-L-079

twice put in jeopardy of life or limb." "This protection applies to Ohio citizens through the Fourteenth Amendment to the United States Constitution, … and is additionally guaranteed by the Ohio Constitution, Article I, Section 10 ['[n]o person shall be twice put in jeopardy for the same offense']." *State v. Ruff*, 2015-Ohio-995, ¶ 10. Among the abuses these provisions protect against are "'multiple punishments for the same offense.'" (Citation omitted.) *Id.*

{¶8} The General Assembly has codified the double-jeopardy protections "as to when multiple punishments can be imposed" in Ohio's multiple counts statute. *Id.* at ¶ 12. That statute provides:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25. "As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when the defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions." *Ruff* at ¶ 31.

Case No. 2025-L-079

{¶9} "Although determining whether R.C. 2941.25 has been properly applied is a legal question, it necessarily turns on an analysis of the facts, which can lead to exceedingly fine distinctions." *State v. Bailey*, 2022-Ohio-4407, ¶ 11. "Because the trial court's ruling [involves] a legal determination premised on the specific facts of this case, the court of appeals properly review[s] the issue de novo." *Id.* at ¶ 13.

### Plain Error

{¶10} In the present case, Lucas did not object at sentencing to the imposition of separate sentences for Domestic Violence and Attempted Abduction. Therefore, the merger issue is reviewed for plain error. *Id.* at ¶ 7.

{¶11} "Under the plain-error doctrine, intervention by a reviewing court is warranted only under exceptional circumstances to prevent injustice." *Id.* at ¶ 8. "To prevail under the plain-error doctrine, [the appellant] must establish that 'an error occurred, that the error was obvious, and that there is "a reasonable *probability* that the error resulted in prejudice," meaning that the error affected the outcome of the trial.'" (Citations omitted.) *Id.* "The elements of the plain-error doctrine are conjunctive: all three must apply to justify an appellate court's intervention." *Id.* at ¶ 9.

### The Trial Court's Failure to Merge Domestic Violence and Attempted Abduction at Sentencing was Not Error

{¶12} In the present case, we find that the trial court's failure to merge Domestic Violence and Attempted Abduction at sentencing was not error, obvious or otherwise.

{¶13} Lucas argues that "the record demonstrates that the offenses of domestic violence and attempted abduction were committed with the same conduct and a single animus, and the resulting harm was not separate or identifiable." Appellant-defendant's

Case No. 2025-L-079

Brief on the Merits at 12. On the contrary, the acts constituting Domestic Violence were distinct from and not incidental to the acts constituting Attempted Abduction. The Domestic Violence was committed by Lucas slapping and punching the victim. The Attempted Abduction was committed by Lucas luring the victim to his grandmother's house, locking her inside, and not allowing her to leave or his grandmother to release her. These are distinct acts. Moreover, the evidence indicates a separate animus for the acts as well inasmuch as Lucas, while restraining the victim's liberty, threatened her for being a snitch apart from the beating he gave her. *Compare State v. Smallwood*, 2025-Ohio-1001, ¶ 44-45 (6th Dist.) (Domestic Violence was committed when the defendant carried the victim into the bedroom and threw her on the bed while Abduction was committed when he locked her in the bathroom).

{¶14} The first assignment of error is without merit.

### *Standard of Review for Felony Sentencing*

{¶15} "The court hearing an appeal [of a felony sentence] shall review the record, including the findings underlying the sentence or modification given by the sentencing court." R.C. 2953.08(G)(2). "The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing … if it clearly and convincingly finds either … [t]hat the record does not support the sentencing court's findings under division … (C)(4) of section 2929.14 [to impose consecutive sentences]" or "[t]hat the sentence is … contrary to law." R.C. 2953.08(G)(2)(a) and (b); *State v. Marcum*, 2016-Ohio-1002, ¶ 1. "[A] sentence is contrary to law when it does not fall within the statutory

Case No. 2025-L-079

range for the offense or if the trial court fails to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12." (Citations omitted.) *State v. Adkins*, 2025-Ohio-4526, ¶ 7 (11th Dist.).

***The Trial Court's Imposition of Maximum, Consecutive Sentences for Domestic Violence and Attempted Abduction is not Contrary to Law***

{¶16} Lucas finds the trial court's imposition of maximum, consecutive sentences for Domestic Violence and Attempted Abduction to be "problematic" in light of the following statements made at sentencing:

> The reason I did accept your plea, and it might be the reason that you pl[e]d, is I didn't want your grandmother to have to testify. Obviously the State took that into consideration. That helped in the overall resolution of this case, but that's where you're going to get the benefit is from pleading to the lesser included offense of [Attempted Abduction in] Count 2.

He argues that "[a] sentence should be based on the offender's conduct and the principles of sentencing, not on a court's perception of what 'benefit' a defendant derived from a plea deal." By treating the real benefit of the plea as sparing an elderly witness from testifying, the court implied that Lucas "deserved no further consideration for leniency [but] should instead receive the harshest possible penalty," affording him "no actual benefit in terms of his sentence." Moreover, the "court's comment suggests a punitive animus." Appellant-defendant's Brief on the Merits at 23.

{¶17} None of the foregoing considerations render Lucas' sentences contrary to law. We begin with the proposition that "[t]rial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum … sentence[s]." (Citation omitted.) *State v.*

*Sergent*, 2016-Ohio-2696, ¶ 34. Accordingly, the trial court had full discretion to do so in the present case. Nor does a punitive animus render a sentence contrary to law. Punishment of the offender is recognized as one of the "overriding purposes of felony sentencing." R.C. 2929.11. Moreover, while the desire to avoid having Lucas' grandmother testify may have been a factor in the court's decision to accept the plea agreement and may have had some intangible value for Lucas, it was not part of the agreement itself. At the time he entered his guilty pleas, Lucas affirmed that no promises of leniency or of any particular sentence were given in exchange for pleading guilty. The actual benefit of the plea agreement was the reduction of a third-degree felony with a maximum penalty of thirty-six months to a fourth-degree felony with a maximum penalty of eighteen months. R.C. 2929.14(A)(3)(b) and (4).

{¶18} Given Lucas' criminal history, the reduction of the potential maximum sentence by a year and a half was a legitimate and valuable benefit as is evident from the trial court's comments immediately following that statement cited by Lucas:

> … but that's where you're going to get the benefit is from pleading to the lesser included offense of Count 2. But every time you're out, it's just a matter of time before I see you on the jail list again. So the only way that society can be protected is for you not to be out in the community.

The court substantiated its position by noting that Lucas has been to prison six times and "everybody realizes recidivism is where the problem lies." In particular, "most of [Lucas' convictions] are for violence and the violence just continues and a lot of it is aimed at women." Contrary to Lucas' argument on appeal, his sentence was based on his conduct and the principles of sentencing.

Case No. 2025-L-079

{¶19}   The second assignment of error is without merit.

{¶20}   For the foregoing reasons, Lucas' convictions and sentence are affirmed. Costs to be taxed against the appellant.


MATT LYNCH, P.J.,

JOHN J. EKLUND, J.,

concur.

# JUDGMENT ENTRY

For the reasons stated in the Opinion of this court, the assignments of error are without merit. The order of this court is that the judgment of the Lake County Court of Common Pleas is affirmed.

Costs to be taxed against appellant.

_____
JUDGE SCOTT LYNCH

_____
PRESIDING JUDGE MATT LYNCH,
concurs

_____
JUDGE JOHN J. EKLUND,
concurs

---

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

---

Case No. 2025-L-079